YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* LEMUEL
L. BALDWIN'S EXECUTORS.

1. DEEDS. *Construction.*

  A deed by which a railroad company acquired a right of way and
  depot grounds must be construed according to its meaning as evi-
  denced by the entire instrument; and when it is apparent there-
  from, considered in the light of the environment of the parties
  and the purposes of the contract, that the company bound itself
  to establish and maintain a depot on the premises, such obligation
  will be enforced, although, by the literal terms used, it agreed
  only to establish one.

2. SAME. *Conditions violated.     Right to sue for damages.*

  If a railroad company continue to hold and use land conveyed to it
  upon condition that it will establish and maintain a depot on the
  premises, and it violate the condition, the grantor may, without
  rescission, maintain an action for damages resulting therefrom.

FROM the circuit court of Claiborne county.

HON. WILLIAM K. McLAURIN, Judge.

Mrs. Baldwin and another, the appellees, executrix and ex-
ecutor of the last will and testament of Lemuel L. Baldwin, de-
ceased, were the plaintiffs in the court below; the Yazoo &
Mississippi Valley Railroad Company, successor of the Natchez,
Jackson & Columbus Railroad Company, was defendant there.
The action was for damages because of the failure of the de-
fendant to maintain a depot at the place once known as "Nor-
ton" and to perform certain obligations under which the rail-
road acquired its right of way, depot grounds and an interest
in lands adjacent.     The plaintiff recovered a verdict and judg-
ment for $1,250 and the defendant appealed to the supreme
court.

Lemuel L. Baldwin, whose executors are the appellees, exe-
cuted, May 14th, 1881, to W. T. Martin, trustee (Martin was
then president of the Natchez, Jackson & Columbus Railroad

Company), a deed conveying a certain tract and parcel of land being part of Greenwood plantation, fully described in the deed, containing one hundred and twenty-five acres, more or less; and also a strip of land one hundred feet wide, fifty feet on each side of the center line of the railroad track as then and now located, etc. The conveyance was upon the following among other conditions:

" Whereas, the said Baldwin and the Natchez, Jackson & Columbus Railroad Company design to build a town on the main track of the land above granted, to be called ' Norton,' and the said company intends to establish a depot on said land; now, in order to effect these objects, the said Martin is with all convenient speed to have the large tract above granted accurately surveyed and plotted and the intended town laid off by metes and bounds and stakes driven to define the lines of lots, squares and streets, at the expense of said company, in such manner as said Martin shall deem most advantageous to all parties concerned, and said Martin shall, as speedily as possible, first, reconvey to Baldwin, or his assigns, one square of ground, to be selected by said Baldwin, in said town adjoining the depot grounds. Second, he shall convey to said railroad company the said right of way of one hundred feet through Greenwood plantation and also depot grounds, to be laid out and designated on the map of said town, not to exceed four acres, for the use of said company and its employes. Third, he shall by proper deeds donate to the public such streets, avenues, lots for churches, schoolhouses and public buildings as may in his judgment conduce to the benefit of the parties herein interested and to the public. Fourth, the said trustee shall procure, at the expense of the company and of said Baldwin, a sufficient number of maps of said town as may be needed to aid in selling lots in said town, and shall proceed to sell said lots as he best can, at public or private sale, for cash or on a credit, to be secured by vendor's lien, mortgage or deed of trust, or deposit of good collateral, negotiable paper or other valuable property,

and shall make title to all purchasers. Fifth, out of the pro-
ceeds of said sales the said Martin shall retain as commissions
ten per centum of the said proceeds and the sum of two and
one half dollars for each bond for title or deed made by him in
making said sales, and shall from the same funds pay all cost
of advertising, lithographing or copying said maps, or acknowl-
edging or recording any such bonds or deeds, and all costs of
litigation that may arise in carrying out the purposes of this
trust, and every expense deemed by him necessary to incur in
building up said town, observing a due degree of economy, and
preserving vouchers to prove all expenditures.  .  ..  .  .  .

"Seventh, the said trustee shall from time to time divide the
proceeds of said sales, after deducting commissions, charges,
etc., as above, equally between said Baldwin and said company,
after he shall have paid all taxes assessed upon the lots and
squares subject under this deed to sale for the benefit of said
Baldwin and said company."

The consideration for the execution of the deed is recited to
have been ten dollars to him (Baldwin) in hand paid by said
Martin, and the benefits to be derived by Baldwin from the
building of the railroad through his lands, and the benefits to
be derived from the building of a town and depot on said Bald-
win's Greenwood plantation.   Martin executed a deed to the
Natchez, Jackson & Columbus Railroad Company for the one
hundred feet wide strip—the right of way—and the four acres
for depot purposes, and the railroad has constantly used the
same, and has had the beneficial ownership of an undivided one-
half interest in the other land conveyed by the deed.   A depot
was seasonably erected and used until April 16, 1896, when it
was destroyed by fire.   It has not since been rebuilt, and trains
have not since stopped at "Norton," save when flagged.   All
efforts to sell town lots proved a dismal failure from the begin-
ning, and the idea of building up a town has long since been
abandoned.   The suit was by the executors of Baldwin, who
died before its institution, for damages, and it was brought

against the Yazoo & Mississippi Valley Railroad Company, the successor in title of the Natchez, Jackson & Columbus Railroad Company.

*Mayes & Harris,* for appellant.

The damages sued for in this action are certainly not recoverable. There was no conveyance of land to the railroad company in consideration of the establishment of a depot, and there is nothing in the instrument which provides for the depot's being maintained in perpetuity. There is a general scheme for the establishment of a town on the plantation, from which Baldwin, the grantee in the instrument, was to receive a direct benefit, by the enhanced value of the property to be sold in lots, and the consequent increase in value of his property in the event the scheme had been successful. The instrument shows that the parties had very large expectations as to a town. It provides for the donation of property for churches, streets and public schools and other public buildings, and Baldwin was to receive one-half of the proceeds of all the sales of lots after deducting expenses. It does not appear anywhere from the record that the railroad company was in any way derelict in the performance of what was required of it, because it did establish the depot there in 1882, and it remained there for fourteen years, but the scheme as to the town utterly failed.

The difficulty with the plaintiffs is that they are treating this matter as a conveyance of land in consideration of the building of a depot for the benefit alone of Greenwood plantation. They leave out of view entirely the main object in view, which was the building of a town, and the building up of the town was just as much an inducement to the railroad company to establish a depot there as it was to Baldwin to make the conveyance. The railroad company made the outlays; it did build the depot, did maintain it for fourteen years, but it is not anywhere intimated in the instrument under which the parties were acting that the depot was to be built there independent of the scheme

for building the town.   There is no evidence that any lots were ever sold, or that they could have been sold, or that there was any dereliction on the part of the railroad company in endeavoring to build the town.   Towns sprang up on either side of Greenwood plantation, one being Carlisle and the other Hermanville, the one being four miles and the other three and a half miles from the proposed town of "Norton."   The building of a depot was a mere adjunct, a mere instrument for the general scheme, and counsel might as well have sued the railroad company for failure to build a town as for failure to maintain the depot.

In the case of *Mobile, etc., R. R. Co.* v. *People*, 132 Ill., 559, the opinion is as follows: "Railroad stations for the receipt and discharge of passengers and freight are for the profit and convenience both of the company and the public. Their location at points most desirable for the convenience of travel and business is alike indispensable to the operation of the road and the enjoyment of it as a highway for the public. Necessarily, therefore, the company cannot be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom, nor allowed, on the other hand, to locate them so far apart as to preclude and deny parties on the line of its road reasonable access to its use.   The duty to maintain and continue stations must manifestly rest on some principle, and the company cannot, therefore, continue a station at a point where the welfare of the company and the community in general require that it should be changed to some other point.   We have held that a railroad company cannot bind itself by contract with individuals to locate and maintain a station at a particular point, or not to locate and maintain them at other points."

In *Bestor* v. *Nathen*, 60 Ill., 138, the facts were: Two persons owning a tract of land on the line of a railroad contracted with the president of another railroad, then being constructed, and a firm of individuals who had contracted to build

that road to lay the land off in town lots, and, after selling lots to the amount of $4,800, to convey to the president of the road and to the construction company an undivided one-half interest in the remaining lots.   The president and individuals composing the construction company were to pay no money, but agreed to aid, assist and contribute to the building up of the town on said lands.   Held, that, if the contract was made to secure the location of the road at a place where it would not be to the greatest benefit to the stockholders of the road, then it was in the nature of a bribe, and cannot be enforced; or, if the place where the parties agreed the road should be located, which was afterwards done, was the route best calculated to promote the interest of the stockholders and the company, and the officers of the company were professing to hesitate between it and another line to procure the agreement, that was a fraud, and the contract could not be enforced in equity.

In *Lindell* v. *Carpenter*, 62 Ill., it was held that a contract made by the officers of a railroad company, acting in their individual capacity, to induce them to establish the line of road at a given point for the purpose of promoting the private advantage of the contracting parties, is against public policy, tending to sacrifice the interest of the stockholders and of the public, and will not be enforced in equity.   *Railway Co.* v. *Barber*, 14 Am. & Eng. Ry. Cases, 466; *Nottawasaga* v. *R. R. Co.*, 38 Am. & Eng. Ry. Cases, 697; *E. R. Co.* v. *Marshall*, 42 Am. & Eng. Ry. Cases, 637.

*J. Mc. Martin* and *H. C. Mounger*, for appellees.

The deed executed by Baldwin had for its consideration three distinct things to be done by appellants, all three being conjoint, and moving Baldwin to grant and convey the several things named, to wit, (1) the benefits derived from the building of the Natchez, Jackson & Columbus Railroad through his Greenwood plantation; (2) the benefits to be derived from the building of a town on said plantation; (3) the benefits to be derived from the building of a depot on said plantation.

In the case of *Atkinson* v. *Sinnòt*, 67 Miss., 508, in regard to construction, the court says "that the sense and meaning of the parties in any particular part of an instrument may be collected *ex antecedentibus et consequentibus;* every part of it may be brought into action in order to collect from the whole one uniform and consistent sense, if that may be done."

"A recital in a deed, showing the motive and reasons on which it is founded, is important to be considered in construing the deed." *Williams* v. *Claiborne*, 7 Smed. & M., 488.

"The main object of a deed is to be gathered from its provisions, and it will depend upon the deed itself which is its main object. When that is ascertained, it must prevail." *Ib.*

It would be folly to say that a town could ever be expected to grow up on the premises conveyed, if a depot was not to be maintained at that point. The moving consideration for the grant is so plain that there is no room to quibble about it. Baldwin expected enhancement of the value of his Greenwood plantation by the establishment and maintenance of a depot, and the gradual growth of a town and the sale of lots, etc. Every rule of construction points to the conclusion that the constant maintenance of a depot was in the minds of all parties. 23 Am. & Eng. Enc. L., 122; *Wallace Tp.* v. *Great Western R. R. Co.*, 25 Grant, ch. 86; 3 Ont. App. Rep., 44; *Jessup* v. *Grand Trunk R. R. Co.*, 28 Grant, ch. 583; *Indianapolis, etc., R. R. Co.* v. *Hood*, 66 Ind., 580; *Louisville, etc., R. R. Co.* v. *Sumner*, 55 Am. Rep., 720; *Houston, etc., R. R. Co.* v. *Molloy*, 64 Texas, 607; *Re Ruthin, etc.*, 27 Am. & Eng. R. Cas., 434; *Louisville, etc., Ry. Co.* v. *Sumner*, 24 Am. & ·Eng. R. Cas., 641; *Watterson* v. *Allegheny Ry. Co.*, 74 Pa. St., 208, s. c. 8 Am. Ry. Rep., 30; Sedgwick on Damages, sec. 630, 8th ed.

Baldwin made his deed in good faith and for valuable consideration. The appellants are bound by the stipulations contained in said deed. It was made by its authorized head. It accepted the fruit of his act, and took deeds from him in carry-

ing out the stipulations, and it was a beneficiary.    There was a breach of the covenants, and appellees brought suit for damages, setting up the breach.    The jury, after hearing all of the evidence, awarded an unusually small sum by way of damages; in fact, it went to the lowest sum fixed by the evidence.    There certainly can be nothing excessive in the verdict.

WHITFIELD, C. J., delivered the opinion of the court.

The fact that the scheme for the building of a town failed is no bar to the plaintiff's right to recover for the failure to maintain the depot. The appellants' agreement about the entirety of the consideration must fail, the appellant itself retaining the right of way and the four acres of ground for depot purposes. It is urged that the word used in this contract is " establish " and not, as in most of the cases cited by counsel for appellee, " establish and forever maintain; " " permanently locate; " " locate and continue," etc. If the only feature of the contract was the depot, this argument would prevail; but the meaning of the word " establish " in this contract must be gathered from the whole contract, looking to the environment of the parties and the purpose of the contract. Thus considered, it is obvious that the depot was intended to last as long as the town, and the then intention, whatever its subsequent fate, was that the town was to last always, and, too, the depot and the right of way went together in one view as necessary to each other. The only trouble we have had has been as to the remedy — whether this action is the proper one, or whether there should not rather have been a rescission of the contract or a recovery of the land. But the appellee could elect this remedy as the full measure of his rights in the premises if they chose. The town has vanished; the railroad still runs through Greenwood plantation, adding to its value; but the depot the appellant refuses to rebuild. Damages for that is the full measure of appellees' rights if they stand, as they do, on the contract. They may, instead of rescinding, elect to stand on the contract, or

recover damages for its breach.    In that view of the matter the judgment is

*Affirmed.*